UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**VICTOR ARIZA**,

    Plaintiff,

vs.

**YNAP CORPORATION,
d/b/a FERRARI S.P.A/SCUDERIA
FERRARI ONLINE STORE,
a foreign for-profit corporation; and
410 PARK DISPLAY, INC., d/b/a
FERRARI STORE, a foreign for-profit
corporation,**

    Defendants.
_____/

## **COMPLAINT**

    Plaintiff VICTOR ARIZA, through undersigned counsel, sues Defendants YNAP CORPORATION, d/b/a FERRARI S.P.A/SCUDERIA FERRARI ONLINE STORE, a foreign for-profit corporation, and 410 PARK DISPLAY, INC., d/b/a FERRARI STORE, a foreign for-profit corporation, and alleges as follows:

    1.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to an internet website for services, to order merchandise, and to secure information about Defendants' stores online. This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property and for

compensatory damages to Plaintiff for such trespass.  Remedies provided under common law for trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5. Plaintiff is and at all relevant times has been visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).

6. Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software.  Screen reader software translates the visual internet into an auditory equivalent.  At a rapid pace, the software reads the content of a webpage to the user.  "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns

that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Defendants are foreign for-profit corporations authorized to do business and doing business in the State of Florida. Defendants own, operates, and control retail clothing stores selling to the public jackets, sweaters, shirts, dresses, pants, handbags, travel bags, backpacks, and accessories, including one of the stores Plaintiff intended to patronize at 19501 Biscayne Boulevard, Aventura, Florida.

8. Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is significantly and permanently blind and visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendants were and still are organizations that own, operate, and/or control retail clothing stores selling to the public jackets, sweaters, shirts, dresses,

pants, handbags, travel bags, backpacks, and accessories under the name "Ferrari Store". Each Ferrari Store is open to the public. As the owner, operator, and crtoroller of these retail stores, Defendants are defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11. Because Defendants are a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulations, 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12. Defendants control, maintain, operate, are linked to, and are heavily integrated with an adjunct website, https://store.ferrari.com/en-us (hereinafter the "Website"). One of the functions of the Website is to provide the public information on the various locations of Defendants' stores that sell their merchandise throughout the United States and within the State of Florida. Defendants also sell to the public their merchandise through the Website.

13. The Website also services Defendants' physical stores by providing information on its available merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to its customers.

14. Because the Website allows the public the ability to locate Defendants' physical stores, purchase merchandise from Defendants that are also available for purchase in the physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, Defendants' physical stores. By this nexus, the Website is characterized as an intangible service, privilege, and advantage provided by a place of public accommodation as defined under the ADA and thus an

4

extension of the services, privileges, and advantages made available to the general public by Defendants through their brick and mortar locations and businesses.

15. Because the public can view and purchase Defendants' merchandise that is also offered for purchase in their physical stores and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is an intangible service, privilege, and advantage of Defendants' brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled general public both online and in the physical stores.

16. At all times material hereto, Defendants were and still are organizations owning, operating, controlling, and linking to the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendants' brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages as are afforded the non-visually disabled public both online and in the physical stores. As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

17. Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendants' physical stores (including the store located at 19501 Biscayne Boulevard, Aventura,

Florida), and to search for store locations, check store hours and merchandise pricing, purchase merchandise, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the Website or in Defendants' physical stores.

18.     The opportunity to shop and pre-shop Defendants' merchandise and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores from his home are important accommodations for Plaintiff because traveling outside of his home as a blind and visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience.  Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually impaired individuals using screen reader software.

19.     Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of December 2020, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, and with the intent of making a purchase through the Website or at one of the Defendant's stores.

21.     Plaintiff utilizes screen reader software that allows individuals who are blind and visually disabled to communicate with websites.  However, the Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

       a. Mislabeled homepage link;

       b. Site function like slider is not labeled to integrate with the screen reader;

   c. Text throughout the website is not labeled to integrate with the screen reader;

   d. Mislabeled images;

   e. Color and size option are not labeled to integrate with the screen reader, only the first size/color is accessible; and

   f. Mislabeled shopping bag.

  22. The Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendants' merchandise from the Website.

  23. Plaintiff attempted to locate an "accessibility" notice, statement or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

  24. The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same online computer shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

  25. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' physical stores and to use the Website, but he is unable to fully do so as he is unable to effectively communicate with Defendants due to his severe blindness and visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26. Because of the nexus between Defendants' retail stores and the Website, and the fact that the Website clearly provides support and is connected to Defendants' retail stores for its operation and use, the Website is an intangible service, privilege, and an advantage of Defendants' brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

27. On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

28. On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29. On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

33. On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

34. On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

35. On information and belief, Defendants have not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36. On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37. On information and belief, Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Website online from their homes.

38. Thus, Defendants have not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Website in contravention of the ADA.

39. Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

40. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website.

41. Defendants are, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

42. Defendants are, and at all relevant items have been, aware of the need to provide full access to all visitors to the Website.

43. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

44. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website's access and operation.

45. Notice to Defendants is not required because of Defendants' failure to cure the violations.

46. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47. Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## Trespass Violations

48. Plaintiff utilizes his computer to access websites such as Defendant's Website.

49. Plaintiff uses his computer as a method of conveyance of his personal information. Plaintiff stores his personal information and retains his browsing history on his computer .

50. Based upon a review of the Website, when a user accesses the Website, Defendants place software on the Plaintiff's personal computer and hard drive, without the user's advance

consent or knowledge.  It is also clear that Defendants have used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

51. Defendant informs the Website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising.

52. Because of his blindness, Plaintiff was unable to fully and meaningfully comprehend the Website; therefore, Plaintiff had no choice as to, and likewise no knowledge of, Defendants' installation of the data and information gathering and tracking software, and the collection of his browsing history, that was placed on his computer and its hard drive, which in fact occurred.

53. Through the Website, Defendants thus have committed a trespass against the Plaintiff by the Website's placement of information gathering and tracking software on Plaintiff's computer without Plaintiff's knowledge or prior consent.

## COUNT I – VIOLATION OF THE ADA

54. Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

55. Pursuant to 42 U.S.C. §12181(7)(E), Defendants are public accommodations under the ADA because they own, operate, coptnriol and are integrated with the Website as defined within §12181(7)(E) and is subject to the ADA.

56. Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate Defendants' physical stores, purchase merchandise that is available for purchase in the physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical stores.  The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendants' physical stores. Further, the Website also serves to augment

11

Defendants' physical stores by providing the public information on the various physical locations of the stores and by educating the public as to Defendants' available merchandise sold through the Website and in the physical stores.

57. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60. Defendants' Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal enjoyment of the information and services that Defendants have made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq.*

62. The Website was subsequently visited by Plaintiff's expert in December 2020, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite Defednant YNAP CORPORATION was a defendant in at least ten prior ADA accessibility lawsuits involving different affiliated and subsidiary companies, which likely resulted in confidential settlements that obligated Defendant YNAP COORPORATION to remediate the Website, Defendants have failed to sufficiently remedy the Webiste to make it fully and equally accessible to blind and visually disabled pesons such as Plaintiff.  Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor have tehy posted on the Website a conspicuous and effective "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendants thus have failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

65. There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

66. Defendants have violated the ADA – and continues to violate the ADA – by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

67. The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

68. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

69. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

70. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

71. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

72. As a direct and proximate result of Defendants' failure to provide an ADA compliant Website with a nexus to their brick and mortar physical stores, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of the Website and thus the full benefits, privileges, and advantages offered by Defendants' physical stores.

73. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

74. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a statement as to the Defendants'

policy to ensure persons with visual disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b) Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being readily accessible, to provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical stores and becoming informed of and purchasing Defendants' merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website.

75. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A. A declaration that the Website is in violation of the ADA;

B. An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that

individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to the Website;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on the Website to be fully accessible to the visually disabled;

---

[1]  or similar.

H.  An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

76. Plaintiff re-alleges paragraphs 1 through 53 as if set forth fully herein.

77. Plaintiff's tangible personal property, being his computer, its hard drive, and the personal information and browsing history stored therein, has suffered a trespass by Defendants on each and every occasion that Plaintiff has accessed the Website, due to Defendants' automatic

installation of information gathering and tracking software and analytics, which are present on and through the Website, on Plaintiff's computer.

78. At all relevant times, Plaintiff did not consent to and was unaware that the Website was placing software on his computer due to his inability to effectively communicate with and fully view and access the Website.

79. Plaintiff did not consent to the placement of the information gathering and tracking software on his computer and its hard drive; therefore, Defendants have committed a trespass against Plaintiff by placing such software on his computer and hard drive without his knowledge or prior consent.

80. By the acts described hereinabove, Defendants have repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

81. Defendants' automatic installation, operation, and execution of information gathering and tracking software on Plaintiff's computer and its hard drive have directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

82. The Website has a "Privacy Policy" that discusses the automatic gathering of information from, and the automatic placement of cookies and other information gathering software on, computers and electronic devices of users of the Website such as Plaintiff. A copy of that "Privacy Policy" is attached hereto as Exhibit "B" and its contents are incorporated herein by reference.

83. Defendants' trespass to chattels, nuisance, and interference has caused real and substantial damage to Plaintiff as follows:

  a) By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles, and internet connectivity);

  b) By infringing on Plaintiff's right to exclude others from his computer;

  c) By infringing on Plaintiff's right to determine, as the owner of his computer, which programs should be installed and operated on his computer;

  d) By compromising the integrity, security, and ownership of Plaintiff's computer ; and

  e) By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his computer without notice or consent.

  84. Defendants' actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

  WHEREFORE, Plaintiff demands a judgment be entered against Defendants for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

  DATED: March 22, 2021

| | |
|---|---|
| **RODERICK V. HANNAH, ESQ., P.A.**<br>Counsel for Plaintiff<br>4800 N. Hiatus Rd<br>Sunrise, FL, 33351<br>T. 954/362-3800<br>954/362-3779 (Facsimile)<br>Email:  rhannah@rhannahlaw.com | **LAW OFFICE OF PELAYO DURAN, P.A.**<br>Co-Counsel for Plaintiff<br>4640 N.W. 7th Street<br>Miami, FL 33126-2309<br>T. 305/266-9780<br>305/269-8311 (Facsimile)<br>Email: duranandassociates@gmail.com |
| By____*s/ Roderick V. Hannah*_____<br>  RODERICK V. HANNAH<br>  Fla. Bar No. 435384 | By ___*s/ Pelayo M. Duran*_____<br>  PELAYO M. DURAN<br>  Fla. Bar No. 0146595 |